```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PATRICIA A. BARBOUR,

                         Plaintiff,
                                                        MEMORANDUM
                                                        AND ORDER
                    v.                                  22-CV-06409-SJB-ARL

NORTHWELL HEALTH & NORTHWELL HEALTH
CORPORATE HEADQUARTERS,

                         Defendants.
-----------------------------------------------------------------X
```

**BULSARA, United States District Judge:**

Plaintiff Patricia A. Barbour ("Barbour") filed this pro se action against her former employer Defendant Northwell Health[1] ("Northwell") alleging that her termination for failure to comply with Northwell's COVID-19 vaccination requirement constituted religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Compl. filed Sep. 30, 2022, Dkt. No. 2 at 3, 5). Northwell has moved to dismiss all claims with prejudice. (Def.'s Mot. to Dismiss dated May 23, 2025, Dkt. No. 16 at 1). For the reasons explained, the Court grants Northwell's motion.

---

[1] The Complaint names "Northwell Health" and "Northwell Health Corporate Headquarters," as the defendant. In its Motion to Dismiss, Northwell asserts that the proper entity is "Northwell Health, Inc." (Def.'s Mot. to Dismiss at 1 n.1). If a defendant believes it has been misidentified, the proper course is to make a motion (perhaps to substitute, or to dismiss, on the grounds that no claim can be asserted against a non-existent entity, and providing legal and factual evidence for the relief), but a party cannot simply unilaterally announce it believes the suit has named the wrong party and have the Court direct the caption be changed. (Indeed, such power could be abused by a defendant seeking to shift liability (or financial exposure) to an entity less amenable to suit or one that is judgment-proof). Because there is only one entity ultimately being sued, the Court uses the term defendant throughout.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purpose of this motion, the Court is "required to treat" Barbour's "factual allegations as true, drawing all reasonable inferences in favor of [her] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.* In addition to the Complaint, the Court considers documents that are incorporated by reference, documents which are integral to the pleading, and documents of which the Court takes judicial notice, including those filed in another court proceeding. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Barbour was employed as a Front Desk Receptionist at the Department of Ophthalmology in Great Neck, New York from August 2005 until her termination on September 28, 2021. (Compl. at 3, 8).[2]

In August 2021, the New York State Department of Health issued an emergency rule directing healthcare entities to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) (repealed Oct. 4, 2023) ("10 N.Y.C.R.R." and "Section 2.61"); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021) ("*We The*

---

[2] Barbour's Complaint lists two dates for her termination: September 27, 2021, (Compl. at 6), and September 28, 2021, (*id.* at 8).

2

*Patriots I*"), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("*We The Patriots II*").  Section 2.61 applied to employees covered by the Rule's definition of "personnel," namely, those employees, staff members, and volunteers "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  10 N.Y.C.R.R. § 2.61(a)(2); *see also We The Patriots I*, 17 F.4th at 274.  The Rule provided medical exemptions to the vaccination requirement, Section 2.61(d)(1), but it did not contain any "'exemption' for personnel who oppose vaccination on religious or any other grounds not covered by the medical exemption."[3] *We The Patriots I*, 17 F.4th at 275.  Northwell implemented a mandatory vaccination policy requiring its employees be vaccinated by September 27, 2021.  (Compl. at 6).

Barbour submitted a letter to Northwell's Human Resources department on August 16, 2021, requesting an exemption from the COVID-19 vaccine because of "[her] religious beliefs."  (*Id.*).  Barbour, who identifies as a "female of Christian faith," (*id.* at 8), wrote that she "believe[s] that [her] body belongs to God . . . which prohibits [her] from putting anything in [her] body that would harm [her]."  (Pl.'s Religious Exemption

---

[3] On August 18, 2021, the New York State Commissioner of Health issued an "Order for Summary Action" requiring certain healthcare facilities to ensure full vaccination against COVID-19 and allowing for both medical and religious exemptions. *See We The Patriots I,* 17 F.4th at 275.  Northwell instituted a vaccination policy and permitted employees to file a "Religious Exemption Request Form."  *See Braccia v. Northwell Health Sys.*, No. 24-2665, 2025 WL 2610704, at *1 (2d Cir. Sep. 10, 2025).  On August 26, 2021, the New York State Department of Health adopted Section 2.61, superseding the Order for Summary Action and eliminating the ability to request a religious exemption; Northwell, accordingly, refused to accept religious accommodation forms.  *Id.*

Req., attached to Pl.'s Opp'n as Ex. A, ("Pl.'s Req."), Dkt. No. 17 at 9).[4]  She stated that she understood the COVID vaccines to have been "manufactured contain[ing] aborted fetal cells" which "[her] faith in God prohibit[ed] [her] from being a part of." (*Id.*).  She claimed to feel "led by the Holy Spirit of God not to accept the COVID shot." (*Id.*).  Northwell denied her exemption request on September 3, 2021.  (Compl. at 6).

Barbour subsequently renewed her request on September 22, 2021 (with an amendment), which Northwell again denied two days later because "there is no alternative arrangement that can be made that would allow [Barbour] to perform [her] duties" and because she "would be a threat to patients, co-workers and visitors." (*Id.*).  Barbour alleges that she had worked for two years during the COVID-19 pandemic, "masked and set apart," and was "never absent or sick during the time." (*Id.*).  She also asserts that during that time she "was in full compliance" with an order requiring Northwell healthcare workers to be tested on a weekly basis.  (*Id.*).  Barbour was fired on September 27, 2021, "because [she] did not take the vaccine." (*Id.*).

Barbour filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 22, 2021, and received a Notice of Right to Sue on July 7, 2022.  (Compl. at 7–9).  She commenced this action on September 30, 2022, in the United States District Court of the Southern District of New York, seeking lost wages,

---

[4] The Court also considers the factual allegations made by Barbour in her opposition papers as doing so does not change the outcome of the case.  *See Moss v. Bd. of Educ. of Brentwood Sch. Dist.*, No. 23-CV-6571, 2025 WL 1548945, at *6 (E.D.N.Y. May 30, 2025) ("[B]ecause of the liberal construction afforded to *pro se* papers, '[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

lost medical benefits, and punitive damages.  (*Id.* at 1, 10).  Barbour was granted leave to proceed *in forma pauperis*.  (Order dated Oct. 4, 2022, Dkt. No. 4).  On October 13, 2022, the Court issued an order, sua sponte, transferring the case to the United States District Court for the Eastern District of New York based on Barbour's allegations.  (Order dated Oct. 13, 2022, Dkt. No. 5). [5]

Northwell filed a letter requesting a premotion conference in anticipation of filing a motion to dismiss the entirety of Barbour's Complaint, (Def.'s PMC Req. dated Mar. 10, 2025, Dkt. No. 10), and Barbour responded in opposition, (Pl.'s Resp. in Opp'n to Def.'s PMC Req. filed Apr. 18, 2025, Dkt. No. 14).  This Court determined that a premotion conference was unnecessary and ordered full briefing on the motion to dismiss.  (Order dated Apr. 22, 2025).

## DISCUSSION

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must contain more than "naked assertion[s] devoid of further factual enhancement."  *Id.* (quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the

---

[5] The case was transferred to the undersigned on January 14, 2025.

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. Oct. 15, 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted). Because Barbour is proceeding pro se, the Court construes her Complaint "to raise the strongest claims [it] suggest[s]." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024). However, her pro se status does not permit the Court to read into her "submissions claims that are not consistent with [her] allegations, or arguments that the submissions themselves do not suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation omitted).

Northwell argues that Barbour's Complaint should be dismissed as it fails to state a plausible claim for religious discrimination or a failure to accommodate. (Def.'s Mot. to Dismiss at 1–2). The Court addresses each theory of liability in turn.

I.  **Religious Discrimination**

Under Title VII, it is "unlawful for employers 'to discharge . . . or otherwise to discriminate against any individual' in his or her employment 'because of such individual's . . . religion.'" *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)).  Generally, there are two elements to a Title VII religious-discrimination claim: first, that "an employer discriminates against a plaintiff by taking an adverse employment action against [her]," and second that the plaintiff's religion "was a substantial or motivating factor contributing to the employer's decision to take the action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quotation omitted).

At the motion to dismiss stage, a plaintiff need not plead specific facts to support a *prima facie* case "as contemplated by the *McDonnell Douglas*" summary judgment framework.  *Id.* at 84.  Instead, absent direct evidence of religious discrimination, a plaintiff must plausibly allege: (1) that she "is a member of a protected class," (2) that she "was qualified" for her position, (3) that she "suffered an adverse employment action," and (4) facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quotation omitted).

Northwell contends that Barbour has not plausibly pled that after refusing the COVID-19 vaccination she was still qualified for her position as a Front Desk Receptionist.  (Def.'s Mot. to Dismiss at 6–7).  An employee is qualified under Title VII when they satisfy "the criteria the employer has specified for the position." *Scé v. City of*

7

*New York*, No. 20-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004), *abrogated on other grounds by*, *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)); *see also Moore v. City of New York*, No. 16-CV-7358, 2018 WL 1281809, at *4 ("To be 'qualified' for a position, however, an employee must not only be capable of performing the work; she must also satisfy the employer's conditions of employment."), *aff'd*, 745 F. App'x 407 (2d Cir. 2018).

Under Section 2.61 being vaccinated against COVID-19 was a requirement for Barbour's employment as a receptionist at a healthcare facility. It required all "[c]overed entities," like hospitals, to "continuously require personnel to be fully vaccinated against COVID-19." [6] 10 N.Y.C.R.R. § 2.61(c). The law's definition of "personnel" was expansive, including "all persons employed . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."[7] *Id.* §§ 2.61(a)(2), (c). Interpreting these provisions, the Second Circuit held that "[v]accination is a condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see also id.* at 293 ("Both this Court and the Supreme Court have consistently recognized that the

---

[6] Northwell asserts, and Barbour does not contest, that it was required to comply with Section 2.61 as a healthcare entity. (Def.'s Mot. to Dismiss at 2–3).

[7] Barbour does not contest that the receptionist position fell within the definition of "personnel" under Section 2.61, nor could she. *See, e.g.*, *Moore v. Montefiore Med. Ctr.*, No. 22-CV-10242, 2023 WL 7280476, at *6 (S.D.N.Y. Nov. 3, 2023) (finding that a receptionist "clearly met the DOH Mandate's definition of 'personnel' because she could 'expose other personnel, patients, or residents to the disease'"); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *7 (S.D.N.Y. Mar. 30, 2023) (finding that a receptionist qualified as "personnel" under the statute because "she worked for a covered entity in an office with other staff members").

8

Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional.").[8]

By refusing vaccination, Barbour was no longer qualified for her position; and that disables her Title VII religious discrimination claim. *See, e.g.*, *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 208 (E.D.N.Y. 2025) (dismissing religious discrimination claim where plaintiff refused to take vaccine on religious grounds as employee of South Shore University Hospital and Northwell Health ); *Bandalos v. Stony Brook Univ. Med. Ctr.*, No. 23-CV-0135, 2024 WL 4276175, at *5 (E.D.N.Y. Sep. 24, 2024) (noting Section 2.61 changed job requirements for health care workers and "[b]ecause the Plaintiff's job required vaccination, she cannot be qualified for her position because she did not receive the vaccine or an exemption"). This claim is, therefore, dismissed.[9]

---

[8] The Second Circuit addressed whether Section 2.61 presumptively burdens religion because it permits "comparable secular conduct" in allowing for a medical exemption but not a religious one. *See We The Patriots I,* 17 F.4th at 284–88. In *We The Patriots I*, it concluded the record did not support a conclusion that "the medical exemptions provided in Section 2.61 and the religious exemption sought are likely comparable." *Id.* at 288; *see also id.* at 285 (noting that the two exemptions "differ in an important respect: applying the Rule to those who oppose vaccination on religious grounds furthers the State's asserted interests, whereas applying the Rule to those subject to medical contraindications . . . would undermine the government's asserted interest in protecting the health of covered personnel"). This analysis was in the context of a constitutional free exercise claim, which Barbour did not bring.

[9] Having found that Barbour was not qualified for the position, the Court need not address the other bases for dismissal, such as failure to allege discriminatory intent, (Def.'s Mot. to Dismiss at 9).

## II.     Failure to Accommodate

Title VII requires an employer "to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'"  *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)).  At the pleading stage, a plaintiff "must plausibly allege that (1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she was] disciplined for failure to comply with the conflicting employment requirement."  *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

Once an employee establishes a *prima facie* case, the "employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (quotation omitted); *see also We The Patriots II*, 17 F.4th at 370 ("Title VII does not obligate an employer to grant an accommodation that would cause 'undue hardship on the conduct of the employer's business.'" (quoting 42 U.S.C. § 2000e(j))).  Such hardship exists "when a burden is substantial in the overall context of an employer's business."  *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Groff*, 600 U.S. at 468).  An employer may raise the defense of an undue hardship in a motion to dismiss "if the defense appears on the face of the complaint."  *Id.* (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)).

10

Barbour alleges that Northwell discriminated against her by failing to provide her with a reasonable accommodation in light of her religious beliefs.  Northwell has demonstrated that granting Barbour her requested accommodation, an exemption from the vaccination requirement, would have imposed an "undue hardship" on its operations.[10]  At the time Northwell rejected Barbour's request for an exemption, state law required all "[c]overed entities" to "continuously require personnel to be fully vaccinated against COVID-19."  10 N.Y.C.R.R. § 2.61(c).  The law did not permit religious exemptions.  *See id.* § 2.61(d).  Failing to comply with the state law subjected Northwell to civil fines and penalties and subjected it to loss of licensure.  *See* N.Y. Pub. Health L. § 2806(1)(a) (2010); *id*. § 12(1); *Does 1–2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *4 (2d Cir. Dec. 20, 2024), *petition for cert. filed*, No. 24-1015 (U.S. Mar. 24, 2025).

In sum, to grant Barbour's requested accommodation, a vaccination exemption, Northwell would have had to violate state law, subjecting it to financial penalties or a suspension or revocation of its operating licenses.  *See Does 1–2*, 2024 WL 5182675, at *4.  "[A]n accommodation that would require an employer to violate the law imposes an undue hardship."  *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025) (per curiam).  Courts in this circuit have repeatedly found that violating New York's vaccine requirement created an undue hardship on hospital employers. *E.g.*, *Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-CV-3091, 2025 WL 1384133, at *10 (E.D.N.Y. May

---

[10] Northwell also argues that Barbour fails to state a *prima facie* failure-to-accommodate claim, but the Court does not reach this issue.

11

13, 2025) ("District courts in the Second Circuit have routinely dismissed Title VII claims against employers with COVID-19 vaccination mandates on the basis that granting employees' requests for religious exemptions would have created an undue hardship by forcing employers to violate Section 2.61.") (collecting cases); *Bartholomew v. Mount Sinai W.*, No. 23-CV-3854, 2025 WL 2772911, at *4 (E.D.N.Y. Sep. 26, 2025) (same); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509–10 (S.D.N.Y. 2023) (same), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

Barbour contends that Northwell has failed to satisfy *Groff's* "undue burden" standard by failing to offer an "individualized analysis—only blanket statements about legal risk." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss dated June 10, 2025 ("Pl.'s Opp'n"), Dkt. No. 17 at 2). In *Groff*, the Supreme Court clarified that undue hardship must be more than *de minimis*—it must be "substantial in the overall context of an employer's business." 600 U.S. at 468. And the Second Circuit has addressed the heightened standard in just this context, more than once, and found that "[e]ven under the heightened standard for undue hardship recently set forth in *Groff*, the risk of these potential penalties [from violating state law] more than suffices to demonstrate that [defendants] were subject to such hardships." *Does 1-2*, 2024 WL 5182675, at *4. For example, in *D'Cunha*, where the plaintiff was also employed by Northwell and subject to its vaccination requirement, the Second Circuit found that Northwell "could not have granted [plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship." 2023 WL 7986441, at *1, *3. It held that its conclusion was consistent with *Groff* "because the

12

burden placed on an employer from violating a state law, like [Section 2.61] in this case, is both 'excessive' and 'unjustifiable.'" *Id.* at *3 (quoting *Groff*, 600 U.S. at 469). Such legal risk is, therefore, sufficient to show an undue burden, and no further "individualized analysis" is required.

Barbour also argues that Northwell failed to consider alternative accommodations—namely reassignment, remote work, unpaid leave, or enhanced PPE (personal protective equipment)—that would not have imposed an undue hardship. (Pl's Opp'n at 2). In *We The Patriots II*, the Second Circuit clarified that "Section 2.61, on its face, d[id] not bar an employer from providing an employee with a reasonable accommodation *that remove[d] the individual from the scope of the Rule*," such as by altering her job duties to "remove [her] from the Rule's definition of 'personnel.'" 17 F.4th at 370. But Barbour did not request an alteration of her job duties that would have put her outside of the "personnel" that required vaccination. Nor did she appear to request any accommodation she now raises, like remote work, beyond an exemption to doing her job unvaccinated. (*See* Compl. at 6; Pl.'s Req.; Pl.'s Opp'n at 1).

Even if the Court were to consider these alternative accommodations, they would still fail to prevent dismissal.[11] "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer." *We The Patriots II*, 17 F.4th at 370. With respect to any request from Barbour asking to work from home, remotely, or in a

---

[11] The Court assumes, for purposes of this motion, that Barbour requested all of the accommodations she raises in her papers. (*E.g.*, Pl.'s Resp. in Opp'n to Def.'s PMC Req. filed Apr. 18, 2025, Dkt. No. 14 at 2 (asserting that she had asked her supervisor "to work from home")).

13

non-public facing capacity, the accommodation would not have been reasonable, since it would have forced Northwell to hire another employee to perform the front desk duties, which is an undue hardship. *See*, *e.g.*, *Brown*, 762 F. Supp. 3d at 213–14 ("[S]uch an accommodation [remote work] would result in an undue hardship on hospital defendants . . . because such employers would have to hire another employee to perform an employee's in-person duties.") (collecting cases); *Devita v. Mount Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *6 (S.D.N.Y. June 18, 2024) (dismissing Title VII failure to accommodate claim where plaintiff "d[id] not elaborate how she could have performed any of the essential functions of her job" by working remotely, or how defendant "could have accommodated her without assigning others to perform her duties"). To the extent Barbour requested other accommodations such as testing, social distancing, or masking in place of vaccination, Section 2.61 did not permit covered entities to do so. Had Northwell provided these accommodations and permitted Barbour to remain unvaccinated, it would have violated Section 2.61. *See Braccia v. Northwell Health Sys.*, No. 24-2665, 2025 WL 2610704, at *2 (2d Cir. Sep. 10, 2025) ("[I]f Northwell had accommodated plaintiffs in the way they sought [masking, weekly testing, and social distancing], it would have been violating the law."); *Algarin*, 678 F. Supp. 3d at 511 ("[T]racking compliance with testing, permitting Plaintiff to potentially expose other workers at [the hospital] to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all significant hardships that create an undue burden on Defendant with the requested accommodation.").

Because Northwell could not have granted Barbour her requested accommodation without violating Section 2.61,[12] the undue burden from its legal obligation defeats her failure to accommodate claim.

## CONCLUSION

For these reasons, the Court grants Northwell's motion and dismisses Barbour's Complaint in its entirety.  In the alternative, Barbour requests leave to amend her Complaint.  (Pl.'s Opp'n at 3).  But leave to amend is not warranted when the "problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Since the problems with Barbour's Title VII claims are substantive, as detailed above, leave to amend would "be futile," and is denied.  *See id.*  The dismissal is with prejudice.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  December 16, 2025
       Central Islip, New York

---

[12] Barbour also argues that there would have been no violation of New York state law, because Title VII as federal law preempts conflicting state law.  (Pl.'s Opp'n at 2).  The Second Circuit has considered and rejected this argument.  *See We The Patriots I*, 17 F.4th at 293 ("[T]he district court erred by finding that Plaintiffs are likely to succeed on their claim that Section 2.61 is preempted by Title VII and therefore violative of the Supremacy Clause.").

15